# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**F I L E D**
December 19, 2007

Charles R. Fulbruge III
Clerk

No. 05-41482

EDWARD DWAYNE ASHFORD

                        Plaintiff - Appellant

v.

UNITED STATES OF AMERICA; RONALD THOMPSON, Regional Director; JONOTHAN DOBRE, Warden, R WHITE, Correctional Counselor

                        Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Texas

Before REAVLEY, SMITH, and GARZA, Circuit Judges.

REAVLEY, Circuit Judge:

    Edward Ashford sued several defendants on a variety of causes of action after he was violently assaulted in prison. Each defendant was granted summary judgment. Ashford contends here that the district court erred only in granting the United States summary judgment on his negligence claim under the Federal Tort Claims Act ("FTCA"). The district court ruled that the FTCA's discretionary-function exception shielded the United States from suit. Because there are issues of material fact as to whether that exception applies, we reverse the grant of summary judgment and remand the case to the district court.

I.  Background

Ashford committed a disciplinary infraction while at a medium-security prison and learned that he would soon be transferred to a high-security prison. He was concerned that the move would place him in confinement with prisoners from Washington, D.C. While he had previously been involved in several incidents with prisoners when he was imprisoned in D.C., he was particularly concerned about an inmate named Kelvin Smith, who had attacked him when they had been locked up together. According to Ashford, after Smith assaulted him, corrections officials in Washington issued two separation orders, which forbid the two from being housed in the same prison population.

Ashford explained his concerns to the prison warden of the medium-security prison. The warden advised him to contact several different prison officials. Ashford wrote those officials and outlined his concerns, explaining that Smith and other gang members had previously attacked him. He emphasized that he should not be housed with prisoners from D.C. Ashford claims that the warden assured him that his safety concerns would be investigated before his transfer.

Ashford was eventually transferred to the high-security prison, but prison officials had failed to investigate his concerns. When Ashford arrived at the prison, he was interviewed by Lieutenant Russell Haas. According to Ashford, he asked Haas if Smith was housed there and explained to Haas his history with Smith. Ashford claims that Haas assured him that Smith was not being housed there. It is uncontested that Smith was in fact being housed at the prison. Haas, however, disputes that Ashford ever mentioned Smith during the intake interview.

Whether Ashford did in fact voice concerns about Smith to Haas is important to this litigation. Prison official Patricia Doty testified that if

Ashford had mentioned Smith as a "security threat" during his intake interview, Ashford "would have been placed in some sort of administrative segregation until that could be investigated." But Doty also testified that prison officials at the intake interview have discretion in determining where to put a prisoner in confinement. Nevertheless, Haas himself confirmed that if Ashford indicated that there was a security risk with another inmate, the "only procedure" that he would have followed would have been to place Ashford in special housing and a further investigation would have been conducted. But that procedure was not followed and Ashford was placed in the general population.

Two days after Ashford arrived at the new prison, an inmate approached Ashford and purportedly said: "I ain't got no beef with you personally, right; but [Smith] sent us." Ashford was then viciously attacked and stabbed approximately 13 times. He sustained wounds to his back, head, inner left ear canal, and upper torso. His left lung was punctured. The attack has left Ashford with both hearing and vision problems.

Ashford filed suit against several of the prison officials and the United States, alleging violations of his civil rights and the FTCA. His FTCA claim accused the United States of negligence for putting him into the general prison population with prisoners from D.C., including Smith. The parties consented to have a magistrate judge hear and decide the FTCA claim, and a *Flowers* evidentiary hearing was held.[1] A *Flowers* hearing "amounts to a bench trial replete with credibility determinations and findings of fact."[2]

After the *Flowers* hearing in which numerous witnesses testified, the magistrate judge decided no issues of credibility and instead granted the

---

[1] *See Flowers v. Phelps*, 956 F.2d 488 (5th Cir.), *modified in part on other grounds*, 964 F.2d 400 (5th Cir. 1992).

[2] *McAfee v. Martin*, 63 F.3d 436, 437 (5th Cir. 1995).

No. 05-41482

United States summary judgment on the discretionary-function exception to the FTCA.

We review grants of summary judgment de novo, applying the same standards as the lower court.³ The Government was properly granted summary judgment on the discretionary-function exception only if there are no material facts in dispute and the exception applied as a matter of law.⁴

## II.  Analysis

Our issue is whether the discretionary-exception applied as a matter of law. We begin with the basics. Generally, sovereign immunity bars suits against the Government; this notion "derives from the British legal fiction that 'the King can do no wrong,' and therefore can never appear as a defendant in 'his' own courts."⁵ Under the FTCA, however, the Government has waived sovereign immunity for personal injury claims caused by "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his [or her] office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."⁶ While the FTCA takes two steps forward in allowing individuals to receive compensation for the negligent conduct of the Government, it takes one step back with the numerous statutory exceptions that limit the circumstances under which individuals may bring suit.⁷

---

³ *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007).

⁴ *See* FED. R. CIV. PROC. 56(c).

⁵ *Santana-Rosa v. United States*, 335 F.3d 39, 41–42 (1st Cir. 2003) (internal citation omitted).

⁶ 28 U.S.C. § 1346(b)(1).

⁷ *Id.* § 2680 (listing the numerous statutory exceptions to the FTCA).

Perhaps the exception that is the most frequent retreat is the discretionary-function exception, which affords the United States protection against any FTCA claim "based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government."[8] The Supreme Court has added some flesh to that bare-boned statutory skeleton, setting up a two-part test to determine whether the discretionary-function exception has been triggered.[9] First, for the exception to apply, the challenged act must involve an element of judgment.[10] In other words, the Government needs to establish there was "room for choice" in making the allegedly negligent decision.[11] If a "federal statute, regulation or policy" specifically prescribes a course of action for the federal employee to follow, the employee has no choice but to adhere to the directive.[12] If the Government can establish that the challenged act involved an element of judgment, step two of the test is met and the discretionary-function exception will apply only if that judgment is of the kind that the exception was designed to shield.[13]

Here, the Government cannot show that step one of the test has been met as a matter of law. Two Government witnesses, Doty and Hass, testified that if an inmate raised a safety concern like the one Ashford claims he raised at the intake interview, prison policy *required* him to be put into solitary confinement until an investigation could be conducted. That policy

---

[8] *Id.* § 2680(a).

[9] *United States v. Gaubert*, 499 U.S. 315, 322–23, 111 S. Ct. 1267, 1273–74 (1991).

[10] *Id.* at 322, 111 S. Ct. at 1273.

[11] *Id.* at 323, 111 S. Ct. at 1274.

[12] *Id.* at 322, 111 S. Ct. at 1273.

[13] *Id.* at 322–23, 111 S. Ct. at 1273–74.

constrained the prison officials' discretion such that if the factual predicate to the policy was met, there was no room for choice in making the decision whether to place Ashford in solitary confinement. There is a dispute, however, about whether the factual predicate to the policy was met: Ashford claims he raised safety concerns, thereby triggering the policy. Government witnesses testified to the contrary. That fact dispute makes summary judgment on the discretionary-function exception improper.

In an attempt to avoid this result, the Government cites a string of cases in which courts have held that the discretionary-function exception protects prison officials' decisions about inmate safety.[14] But in each of those cases, the inmate could point to no specific prison policy or regulation that constrained prison officials' judgment other than the prison's general duty to protect its prison population.[15] Here, however, there is a specific policy in place that constrained the decision-making ability of the prison officials.[16] Accordingly, the United States should not have been granted summary judgment on the discretionary-function exception.

We REVERSE the grant of summary judgment in favor of the United States on Ashford's FTCA claim and REMAND. Because we reverse, we DENY Ashford's motion for the production of the audio tape of the *Flowers* hearing as moot.

---

[14] *See Santana-Rosa v. United States*, 335 F.3d 39, 43–44 (1st Cir. 2003); *Dykstra v. United States Bureau of Prisons*, 140 F.3d 791, 795–96 (8th Cir. 1998); *Calderon v. United States*, 123 F.3d 947, 948–950 (7th Cir. 1997).

[15] *See Santana-Rosa*, 335 F.3d at 43–44; *Dykstra*, 140 F.3d at 795–96; *Calderon*, 123 F.3d at 948–50.

[16] *See Gaubert*, 499 U.S. at 322, 111 S. Ct. at 1273 (noting that a "federal statute, regulation or *policy*" can work to nullify the discretionary-function exception (emphasis added)).