IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| EDWARD DWAYNE ASHFORD | § | |
| VS. | § | CIVIL ACTION NO.   1:02-CV-598 |
| UNITED STATES OF AMERICA | § | |

<u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

Plaintiff Edward Dwayne Ashford, a federal prisoner previously confined in Beaumont, Texas, proceeding *pro se* and *in forma pauperis*, filed this civil action pursuant to the Federal Tort Claims Act ("FTCA") against the United States of America.

The case proceeded to a non-jury trial before this court.  On October 19, 2004, the parties presented testimony and evidence before the court.  Pursuant to Federal Rule of Civil Procedure 52, the court announces and adopts the following Findings of Fact and Conclusions of Law.

<u>Findings of Fact</u>

**A.  General Findings**

(1)   On October 25, 2004, pursuant to the written consent of all parties, this case was assigned to the undersigned United States Magistrate Judge for trial and entry of judgment.

(2)   At the time of the incidents at issue in this lawsuit, plaintiff was an inmate at the Medium Security Institution at the Federal Correctional Complex, and then at the United States Penitentiary in Beaumont, Texas.

**B.  Specific Findings**

(3)   On August 2, 2001, while he was confined at the medium security prison at the Federal Correctional Complex in Beaumont, plaintiff was placed in administrative segregation

pending an investigation into a rule infraction. On August 29, 2001, the Disciplinary Hearing Officer found plaintiff guilty of the rule violation and recommended that plaintiff receive a disciplinary transfer. As a result of this recommendation, plaintiff was subject to a custody demotion which would require that he be transferred to a high security facility, or penitentiary.

(4)     When he learned of the impending transfer, plaintiff was concerned about his safety because he had problems with prisoners from Washington, D.C. while he was confined at the federal penitentiaries in Terre Haute, Indiana and Leavenworth, Kansas. Plaintiff explained his security concerns to Warden Jonathan Dobre while Warden Dobre was making rounds in October 2001. Warden Dobre instructed plaintiff to contact Ronald Thompson, the Regional Director.

(5)     On November 1, 2001, plaintiff wrote a letter to Mr. Thompson, outlining his safety concerns, and provided Warden Dobre with a courtesy copy of the correspondence. In the letter, plaintiff explained that, for various reasons, he should not be housed with prisoners from Washington, D.C. Plaintiff specifically mentioned Kelvin Smith posed a threat to him. The Regional Director's Office forwarded the letter to Warden Dobre on November 23, 2001.

(6)     Plaintiff was transferred to the United States Penitentiary in Beaumont on November 14, 2001. Prior to plaintiff's transfer, Patricia Doty, the Case Management Coordinator, or her assistant, did a pre-arrival screening. The screening is done to ensure that the transferred inmate is not a threat to others at the penitentiary, that other inmates at the penitentiary are not a threat to the inmate, and that the inmate is appropriately assigned to a penitentiary. The screening consists of reviewing the inmate's classification, disciplinary history, and the reason for the transfer. The screener also reviews separation information on a computer database to ensure that an inmate is not housed with an inmate who poses a threat to him. The computer database did not reflect that

plaintiff had any separation issues with respect to Kelvin Smith, or the two inmates who assaulted plaintiff on November 16, 2001.

(7)     When plaintiff arrived at the penitentiary in Beaumont, he went through two separate screenings. First, plaintiff was interviewed by someone from Unit Management. The interviewer reviewed the separation information in the computer database, and in plaintiff's Central File, which came with him from the medium security prison. There was no separation information in plaintiff's Central File or in the computer database. The interviewer then completed an intake form. The intake form, signed by plaintiff, reflects that plaintiff told the interviewer that he did not know of any reason that he should not be placed in general population. Plaintiff did not report any concerns about being housed with Kelvin Smith or the two inmates who later assaulted him. If plaintiff had reported any concerns, the interviewer would have determined whether the inmates were located at the penitentiary in Beaumont. Then, plaintiff would have been placed in administrative segregation while prison officials conducted a further review to determine whether the inmates posed a threat to the plaintiff. After the assault, Ms. Doty again reviewed the computer database and plaintiff's Central File and did not find any separation orders. Ms. Doty also requested and reviewed plaintiff's and Kelvin Smith's files from Washington D.C., which did not reflect any connection between the two inmates.

(8)     Lieutenant Russell Haas conducted the second screening that took place after plaintiff's arrival at the penitentiary. Lieutenant Haas interviewed plaintiff to determine whether he had any safety concerns. Plaintiff did not report any potential security concerns with Kelvin Smith or any other inmate at the penitentiary. If plaintiff had reported a security risk, Lieutenant Haas

would have placed him in administrative detention and investigated whether plaintiff could be housed in general population.

(9)     While he was housed in general population prior to the assault, plaintiff did not report any potential security concerns with Kelvin Smith or any other inmate at the penitentiary.

(10)    On November 16, 2001, plaintiff was stabbed by two inmates who claimed Kelvin Smith had ordered them to attack plaintiff. Plaintiff suffered serious injuries as a result of the attack.

Conclusions of Law

**A. Jurisdiction**

(1)     This court has jurisdiction over a lawsuit brought pursuant to the Federal Tort Claims Act based upon Title 28 U.S.C. § 1331, Title 28 U.S.C. § 1346(b)(1), and Title 28 U.S.C. § 2674.

(2)     The United States Penitentiary in Beaumont, Texas is located in Jefferson County, Texas. As a result, venue is proper in the Beaumont Division of the Eastern District of Texas, Title 28 U.S.C. § 1391.

(3)     Pursuant to the consent of the parties and Title 28 U.S.C. § 636(c), the undersigned United States Magistrate Judge has authority to enter a final judgment.

**B. Federal Tort Claims Act**

(4)     Under the FTCA, the United States may be held liable only if a private person would be liable for the same allegedly negligent act or omission under the laws of the state in which the act or omission occurred. 28 U.S.C. § 2674. Thus, plaintiff's claim is governed by Texas' law on negligence. *Skipper v. United States*, 1 F.3d 349, 352 (5th Cir. 1993). Under Texas law, negligence consists of four elements: (1) a legal duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) actual injury to the plaintiff; and (4) a showing that the breach was a proximate cause of

the injury. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 314 (5th Cir. 2002); *Skipper*, 1 F.3d at 352.

Defendant, through the Bureau of Prisons, has a duty to exercise ordinary diligence to protect inmates from harm. *Jones v. United States*, 534 F.2d 53, 54 (5th Cir.), *cert. denied*, 429 U.S. 978 (1976). According to plaintiff's allegations, the Bureau of Prisons breached the duty by allowing plaintiff to be transferred to the penitentiary without first thoroughly investigating plaintiff's security issues.

(5)     Based on the evidence, the court concludes that the Bureau of Prisons and its employees exercised ordinary diligence to protect inmates from harm. Plaintiff wrote to the Regional Director when he knew that he would be transferred to a penitentiary, but did not know where he would be assigned. In the letter, plaintiff referenced incidents that were supposedly in his inmate file, but the evidence shows that those incidents were not documented in his file from Washington D.C., his Central File maintained by the Bureau of Prisons, or the computer database. The letter was forwarded to Warden Dobre for a response on November 23, 2001, after plaintiff had been assaulted.

The evidence does not support plaintiff's assertion that he discussed his security concerns with Lieutenant Haas upon his arrival at the penitentiary in Beaumont. Ms. Doty testified that there were no security issues noted in plaintiff's records. Lieutenant Haas and Ms. Doty both testified that if plaintiff had raised security concerns during the intake process, he would have been placed in administrative detention while the security issues were investigated. Plaintiff filed a number of grievances concerning the assault. In those grievances, plaintiff states that he wrote letters concerning his security concerns, but none of the grievances mention that he discussed security

concerns with Lieutenant Haas or any other prison employee at the penitentiary. The intake form, which reflects that plaintiff said there was no reason he could not be assigned to general population, supports the testimony of Lieutenant Haas and Ms. Doty. As a result, the court concludes that the Bureau of Prisons, and its employees were not negligent.

Conclusions

(1)   Any Finding of Fact which constitutes a Conclusion of Law shall be deemed a Conclusion of Law, and any Conclusion of Law which constitutes a Finding of Fact shall be deemed a Finding of Fact.

(2)   In accordance with the court's findings of fact and conclusions of law, judgment will be entered for the defendant.

**SIGNED** this   31   day of              July              , 2010.

_____
EARL S. HINES
UNITED STATES MAGISTRATE JUDGE